181 S.W.3d 123 (2005)
Michael L. CARROLL, Respondent,
v.
MISSOURI INTERGOVERNMENTAL RISK MANAGEMENT ASSOCIATION, Appellant,
Missouri United School Insurance Council, Amicus Curiae.
No. WD 64180.
Missouri Court of Appeals, Western District.
October 25, 2005.
Motion for Rehearing and/or Transfer Denied December 20, 2005.
Application for Transfer Denied January 31, 2006.
*124 David P. Bub, St. Louis, MO, for Appellant.
Michael S. Shipley, Kansas City, MO, for Respondent.
Leslie A. Greathouse, Kansas City, MO, for Amicus Curiae.
Before SMART, P.J., HOLLIGER and HARDWICK, JJ.
Motion for Rehearing and/or Transfer to Supreme Court Denied December 20, 2005.
LISA WHITE HARDWICK, Judge.
In this equitable garnishment action, the circuit court granted summary judgment, allowing Michael Carroll to recover $150,000 from the Missouri Intergovernmental Risk Management Association (MIRMA) as the insurer for the City of Stanberry. MIRMA appeals, contending the court incorrectly applied the law in determining it was obligated to pay on a claim that was submitted untimely.

FACTUAL AND PROCEDURAL HISTORY
On October 8, 1999, Michael Carroll was injured in a vehicular collision that occurred when he ran a stop sign in Stanberry, Missouri ("City"). On November 21, 2000, Carroll's attorney sent a letter to the City alleging Carroll's injuries were caused by the City's negligence in failing to trim an overgrown tree that obscured the stop sign. Based on this negligence allegation, Carroll filed a lawsuit against the City on December 15, 2000.
At all times relevant herein, the City was a member of MIRMA, a non-profit association of fifty-eight municipalities organized under Section 537.620-537.650[1] *125 and authorized as an "insurance entity" by the Missouri Department of Insurance. The City notified MIRMA's claims administrator about Carroll's lawsuit on January 11, 2001. MIRMA promptly denied the claim as untimely. MIRMA's "Claims Handling Procedures" required that claim forms be completed and in the mail within forty-eight hours of the incident which gave rise to a claim, or within forty-eight hours of the member's first knowledge of the incident. The procedure also allowed a grace period of up to thirty days for notification of a claim. MIRMA denied coverage because it did not receive the City's claim until fifty-one days after the City first had knowledge of Carroll's accident and negligence allegation.
Prior to trial in the negligence lawsuit, Carroll agreed, pursuant to Section 537.065, to seek collection from MIRMA for any judgment against the City. Carroll presented his case at trial, and the City offered no evidence. The court found in Carroll's favor, awarding him $150,117.30 in damages based on the City's negligence.
Carroll filed an equitable garnishment action against MIRMA to collect on the judgment against the City. As an affirmative defense, MIRMA asserted the City's claim was not covered due to its untimely submission. Both Carroll and MIRMA filed motions for summary judgment addressing whether MIRMA was required to show prejudice to avoid payment of an untimely claim. MIRMA stipulated that no prejudice resulted from the late claim notice but argued that it was not subject to the prejudice requirement as a "self-insurance" association organized under Section 537.620.
The court granted summary judgment in favor of Carroll, concluding that MIRMA was required to show prejudice and had failed to do so in denying coverage on the City's claim. The court entered a garnishment ordering MIRMA to pay the judgment of $150,117.30, plus costs and interest.

POINTS ON APPEAL
MIRMA raises three points on appeal, all contending the circuit court erroneously applied the law in granting Carroll's summary judgment motion. Point I asserts the court erred in determining MIRMA was subject to the judicially created requirement that "insurers" must demonstrate prejudice before denying coverage on an untimely filed claim. Point II argues that even if MIRMA was an insurance company, the court erred in determining the prejudice requirement applied to the "self-insurance risk pool" created by MIRMA and its members. Point III asserts the equitable garnishment action failed to state a proper claim for relief because MIRMA is not an insurance company.

STANDARD OF REVIEW
Rule 74.04(c)(6) permits a trial court to enter summary judgment if "the motion, the response, [and] the reply ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Our review of a summary judgment is de novo, as the determination is purely an issue of law. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). The record is reviewed in the light most favorable to the party against whom judgment was entered, and the non-movant is given the benefit of all reasonable inferences from the record. Id.
A movant's right to summary judgment differs significantly depending upon whether the movant is a claimant or defending party. Id. at 381. A claimant must establish there is no genuine dispute *126 as to any material facts on which the claimant would have the burden of persuasion at trial. Id. If an affirmative defense has been raised, the claimant must also establish the absence of one or more facts necessary to prove the defense. The claimant must demonstrate that the affirmative defense fails as a matter of law. Id.

DISCUSSION
This is an action for equitable garnishment, pursuant to Section 379.200, where an injured party can seek recovery against a tortfeasor's insurer. The plaintiff, therefore, "stands in the shoes of the insured, and his rights are no greater and no less than the insured's would have been in an action between the insured and the insurer" on the policy. Meyers v. Smith, 375 S.W.2d 9, 15 (Mo.1964); see also Johnston v. Sweany, 68 S.W.3d 398, 400-401 (Mo.banc 2002).
It is undisputed that the City of Stanberry had liability coverage under MIRMA's plan at the time of Carroll's accident.[2] MIRMA refused coverage on the sole ground that the City failed to submit a claim within thirty days of its first knowledge of the accident and allegation of negligence. MIRMA has stipulated that it was not prejudiced by the City's fifty-one day delay in submitting the claim. The issues on appeal primarily concern whether MIRMA could lawfully deny the claim when it concedes no prejudice from the late submission.
"Missouri courts have consistently placed the burden on insurers to demonstrate that they are prejudiced by receiving late notice of a claim before allowing the companies to avoid coverage under a policy because of the late notice." Tresner v. State Farm Ins. Co., 913 S.W.2d 7, 11 (Mo. banc 1995). This "requirement that the insurer bear the burden of proving prejudice from late notice is a judicially-created exception to the rule expressed in Missouri Commercial Inv. Co. v. Employers Mut. Cas. Co., 680 S.W.2d 397, 400 (Mo.App.1984), that the insured bears the burden of showing compliance with the requisite policy conditions, including any notice provisions, in order to make a submissible case for recovery." Id. at n. 3. See also MAI 32.24 (6th ed.2002) (affirmative defense instruction requiring insurer to prove violation of policy condition and resulting prejudice). The Supreme Court has explained the public policy underlying this exception:
The function of the notice requirements is simply to prevent the insurer from being prejudiced, not to provide a technical escape-hatch by which to deny coverage in the absence of prejudice nor to evade the fundamental protective purpose of the insurance contract to assure the insured and the general public that liability claims will be paid up to the policy limits for which premiums were collected. Therefore, unless the insurer is actually prejudiced by the insured's failure to give notice immediately, the insurer cannot defeat its liability under the policy because of the non-prejudicial failure of its insured to give immediate notice of an accident or claim as stipulated by a policy provision.
Weaver v. State Farm Mut. Auto. Ins. Co., 936 S.W.2d 818, 820 (Mo. banc 1997).
The circuit court granted summary judgment in Carroll's favor, based on a determination that MIRMA provided insurance to the City and was, therefore, required to show prejudice before denying the claim as untimely. In Point I on appeal, *127 MIRMA contends the court erred in concluding that it is an insurance company subject to the judicially-created prejudice requirement. MIRMA argues the prejudice exception is only applicable to traditional insurance companies organized under the insurance statutes in Chapter 379. MIRMA describes itself as a "self-insurance risk pool" organized under the sovereign immunity provisions of Section 537.620 to provide municipalities with an alternative to purchasing traditional insurance. MIRMA asserts Missouri courts have not applied the prejudice requirement to self-insurers and, thus, the circuit court erred in extending the exception to the facts of this case.
Contrary to these arguments, our courts have not limited the prejudice requirement to insurers organized under Chapter 379. In Geisner v. Budget Rent A Car of Missouri, 999 S.W.2d 265 (Mo.App.1999), Budget was self-insured on the first $250,000 loss incurred by the driver of a rental car. Id. at 266. Budget refused to pay a damage claim on grounds that it did not receive timely notice of a negligence action against the driver. Rejecting that defense, the Eastern District held:
An insurer must plead prejudice resulting from an insured's failure to provide timely notice of a claim as an affirmative defense. Budget failed to plead prejudice resulting from Driver's alleged failure to provide timely notice of Plaintiff's claims against her. Accordingly, whether Budget received timely notice of Plaintiff's claims was immaterial.
Id. at 267 (citations omitted).
Geisner indicates the prejudice requirement has been applied to an entity that acted as a self-insurer and was not organized as an insurance company under any Missouri statute. MIRMA seeks to distinguish Geisner on the ground that Budget's role was tantamount to that of a traditional insurance company entering into a contract of adhesion with the driver of a vehicle. In contrast, MIRMA describes itselfin Point II on appealas a "self-insurance risk pool"[3] to which there is no need to apply the prejudice requirement because the members have equal bargaining power in determining the policies of the association. We note, however, that mutual insurance companies are subject to the prejudice requirement even though they operate in a manner similar to that described by MIRMA. See Weaver, 936 S.W.2d 818. Missouri courts have applied the prejudice exception whenever a business entity is contractually obligated to provide liability insurance, no matter how the entity is organized or operates under state or foreign law.
Faced with case law indicating that insurers of all organizational types must prove prejudice to avoid payment of a late claim, MIRMA argues alternatively that it does not provide insurance and does not operate as an insurance company based on disclaimers in its "Coverage Outline."[4] *128 This assertion is contradicted by Section 537.620, which authorized the creation of MIRMA as a "business entity for the purpose of providing liability and all other insurance" to political subdivisions. Consistent with this purpose, Carroll points out that MIRMA's own website contains the following Mission Statement: "(MIRMA) is an alliance of governmental entities committed to providing comprehensive, competitively-priced insurance and risk management services to its members." (emphasis added). The website further states that MIRMA's goal is to "[p]rovide a scope of insurance to protect MIRMA members assets." Despite any disclaimer in the Coverage Outline, MIRMA clearly markets itself as an insurance provider.
As the circuit court explained, MIRMA acts as an insurer given the nature of its relationship with its members and the legislative intent of the authorizing statute, Section 537.620:
An "insurer," by definition, is one who issues "insurance." "Insurance" is "coverage by contract whereby for a stipulated consideration one party undertakes to indemnify or guarantee another against loss by a specified contingency or peril." Scott v. Labor and Indus. Relations Comm'n, 757 S.W.2d 635, 636 (Mo.App.1988), quoting Webster's Third New International Dictionary. See also, Black's Law Dictionary, 5th Ed. (1979)(defining "insurance" as a "contract whereby one undertakes to indemnify another against loss, damage, or liability arising from an unknown or contingent event and is applicable only to some contingency or act to occur in the future," and "insurer" as the "party agreeing to make the compensation.")
Pursuant to its contract, the City of Stanberry paid MIRMA a stipulated consideration, in the form of assessments. In exchange for this consideration, MIRMA agreed ... to indemnify or guarantee the City of Stanberry against loss by specified contingencies, "including errors, omissions, misfeasance, malfeasance or non-feasance, for damages direct or consequential, and expenses defined by the `Ultimate Net Loss,' on account of bodily injury or personal injury." The contract between the City of Stanberry and MIRMA could hardly fit the definition of insurance more clearly. ...
This conclusion is consistent with the statutory scheme under which MIRMA is organized. ... If the legislature had intended to delete the reference[s] to insurance, it could have easily done so. Rather than avoid references to insurance, however, the legislature made several specific uses of the term insurance, and made the entities thereby created subject to approval and regulation by the Department of Insurance.
The circuit court correctly applied the law in determining that MIRMA provides insurance to its members and is thereby subject to the prejudice requirement under Missouri common law. Points I and II are denied.
In Point III, MIRMA contends Carroll failed to state a cause of action for an equitable garnishment claim under Section 379.200 because that provision is only applicable to insurance companies, which MIRMA is not. In light of our finding that MIRMA provided insurance to its members and was authorized as an insurance entity under Missouri law, this point must be denied. We note further that *129 Section 379.200 permits an equitable garnishment action against an "insurance company, person, firm or association[.]" The equitable relief is not limited to insurers organized under Chapter 379 and is expressly applicable to:

[E]very contract of insurance made between an insurance company ... or association, whether, stock, mutual, reciprocal or other company ... and any person, firm or corporation, by which such person, firm or corporation is insured against loss or damage on account of the bodily injury or death or damage to property by accident of any person[.]
§ 379.195.1 (emphasis added). MIRMA's agreement to provide liability coverage for the City of Stanberry falls well within this definitional provision. Accordingly, Carroll's equitable garnishment petition stated a proper claim for relief against MIRMA.

CONCLUSION
Carroll established there was no genuine issue of fact on the equitable garnishment claim and that MIRMA's affirmative defense of untimely notification failed as a matter of law. The circuit court properly granted summary judgment in Carroll's favor. The judgment is affirmed.
Carroll's Motion to Strike the Amici Brief of the Mid-America Regional Council Insurance Trust and the Missouri United School Insurance Council is denied.
All concur.
NOTES
[1] All statutory citations are to the Missouri Revised Statutes 2000, unless otherwise noted.
[2] In their response to the summary judgment motion, MIRMA admitted all factual allegations except those related to the affirmative defense of untimely notification.
[3] For purposes of this case, we need not and do not determine whether MIRMA's characterization of itself as a "self-insurance risk pool" is correct. The application of the prejudice requirement depends upon whether MIRMA provided insurance to its members and not the management structure of the association. We note, however, that MIRMA's organizational structure does not appear to satisfy the key feature identifying self-insurers: retention of the risk of loss by the one upon whom it is imposed by law or contract. St. John's Reg'l Health Ctr. v. Am. Cas. Co., 980 F.2d 1222, 1225 (8th Cir.1992). By legislative mandate, MIRMA is a separate "business entity" from which municipalities can purchase insurance in order to shift their losses. § 537.620.
[4] MIRMA's Coverage Outline states:

The outline is not an insurance policy but is incorporated by reference as a section of the Association's Second Revised By-Laws. The Articles of Association specifically prohibits the issuance of a policy of insurance by the association, as under the laws of the State of Missouri, only an insurance company has the authority to issue an insurance policy.